IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| DEBORAH SCHRIDER,<br><br>Plaintiff,<br><br>v.<br><br>DEVLIN CONTRACTING AND<br>MAINTENANCE, INC., ET AL.,<br><br>Defendants. | *<br>*<br>*<br>*    Civil No. 24-2978-BAH<br>*<br>* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Deborah Schrider ("Plaintiff") filed this lawsuit against her former employers, Devlin Contracting and Maintenance, Inc. ("Devlin Contracting"), Devlin Solar, Inc. ("Devlin Solar"), Matthew Devlin, Brian Devlin, and Cindy Ingemi, (collectively "Defendants") to collect unpaid wages, liquidated treble damages, reasonable attorneys' fees and costs for violations of the Maryland Wage Payment and Collection Law, Maryland Code, Labor and Employment ("LE") Article §§ 3-501 et seq. (hereinafter "MWPCL"). *See* ECF 1 ("Complaint"). Pending before the Court is Plaintiff's Motion for Default Judgment. *See* ECF 17 (the "Motion"). Defendants, who have never answered Plaintiff's lawsuit, did not file an opposition. The Motion includes a memoranda of law and exhibits.[1] The Court has reviewed these filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Plaintiffs' Motion for Default Judgement is **GRANTED** in part and **DENIED** in part. The request for attorney's fees is **DENIED** without prejudice.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

Specifically, Plaintiff's Motion will be provisionally **GRANTED** as to Matthew Devlin, Devlin Solar, and Devlin Contracting. The Court will not enter judgment against these three defendants until 14 days following this order and will await a status report from Plaintiff, to be filed before that date, addressing how Plaintiff intends to proceed against the remaining unserved Defendants. The motion is **DENIED** as to Brian Devlin and Cindy Ingemi. Further, the Clerk's Entry of Default as to Brian Devlin and Cindy Ingemi, *see* ECF 11, is **VACATED**. If Plaintiff informs the Court that she wishes to maintain this action against Brian Devlin and Cindy Ingemi, the Court will not enter judgment against Matthew Devlin, Devlin Solar, and Devlin Contracting and will vacate this Memorandum Opinion. Additionally, Plaintiff's Motion will be **DENIED** as to attorney's fees, however the Court grants Plaintiff one opportunity to supplement the record on attorney's fees within 14 days of the date of this Order.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff is a Maryland resident who, from May of 2019 to June 8, 2023, "was an employee of Defendants who exclusively performed her duties in Maryland." ECF 1, at 2 ¶ 1. She alleges that Devlin Contracting and Devlin Solar, both Massachusetts corporations, "directly, hired her, set her rates of pay, signed her checks, set the terms and conditions of their employment, set her schedules, directed her in the performance of her work, maintained employment records for Plaintiff, disciplined her, and paid her wages." *Id.* ¶ 2. Plaintiff further alleges that Matthew Devlin, a Massachusetts resident, "is the owner and president" of Devlin Contracting and Devlin Solar and is "instrumental" in the "operation and management" of both businesses. *Id.* at 3 ¶ 4. Brian Devlin, also a resident of Massachusetts, is alleged by Plaintiff to be the "co-owner" of both businesses, and, like Matthew Devlin, is alleged to be "in charge of day-to-day operations" and

2

"responsible for all pay decisions regarding Plaintiff during the term of her employment." *Id.* at 3–4 ¶ 5. Cindy Ingemi is also a Massachusetts resident and "is a [p]artner and an operations manager" at Devlin Contracting and Devlin Solar. *Id.* at 4 ¶ 6. Plaintiff alleges that "[a]long with Matthew and Brian Devlin, she was responsible for all pay regarding Plaintiff during the term of [Plaintiff's] employment with Devlin Contracting and Devlin Solar." *Id.*

Plaintiff alleges that she began her employment with Defendants in May of 2019. *Id.* at 5 ¶ 10. She claims she "was eligible to receive nondiscretionary commissions associated with her sales efforts" but was "routinely forced to plead with Devlin management in order to receive these wages, and she was frequently ignored." *Id.* Plaintiff also alleges that she "was eligible to receive nondiscretionary 'overrides' – a commission that [Plaintiff] earned for each sale made by a member of the sales team that she managed." *Id.*

Plaintiff alleges that beginning in May of 2022, Defendants either delayed or denied payment for commissions and overrides[2] to which Plaintiff was entitled. *Id.* at 5–6 ¶¶ 11–12. Plaintiff first attempted to recover payment of "commissions associated with three customers" that she contends she was entitled to. *Id.* at 5 ¶ 11. Then, in mid-December of 2022, Plaintiff alleges that she had to travel to Massachusetts and "personally met with Matthew Devlin to demand payment of over $50,000 in unpaid wages," at which point she was told that she was not being paid because Devlin Contracting and Devlin Solar were "allegedly experiencing cash flow issues." *Id.* at 6 ¶ 13. On March 27, 2023, Plaintiff claims she entered into a contract with Devlin Solar that guaranteed a salary of "$60,000 per year and sales commissions" on a "per project basis." *Id.* at 7 ¶ 17. The agreement, which is attached to the complaint, ECF 1-1, outlined "mandatory

---

[2] Plaintiff describes an "override" as "a commission that [Plaintiff] earned for each sale made by a member of the sales team that she managed." ECF 1, at 5 ¶ 10.

commission rates" for sales made by Plaintiff and "did not make payment of commissions contingent upon installation of any products." ECF 1, at 7 ¶ 17. Thus, Plaintiff alleges, her "efforts were complete once the sale was made to a client, regardless of whether installation was ever ultimately completed on these sales." *Id.*

"After months of pleading," Plaintiff alleges that Defendants made "partial payment of $20,000" in April of 2023 and again "admitted to withholding payment due to cash flow issues." *Id.* ¶ 18. Plaintiff alleges that she reached out to Defendants seeking payment of "12 commissions and 79 overrides" that remained "several months past due." *Id.* at 7–8 ¶ 18. Despite being told by Matthew Devlin that funds were available to pay her past-due compensation, Plaintiff claims her demands for payment were ignored, forcing her to send an email seeking "$148,196.17" in overdue wages. *Id.* at 8 ¶ 19.   Plaintiff alleges that she received a response to this email from Matthew Devlin "acknowledg[ing] his failure to pay [Plaintiff's] commissions and overrides in the amount of $131,031.00" due to "cash flow issues." *Id.* ¶ 20.

In June of 2023, Plaintiff gave notice that she would resign from Defendants' employ and demanded "$148,196.17 in unpaid wages." *Id.* at 9 ¶ 21. Plaintiff alleges that Terry Devlin, the wife of Matthew Devlin and "Head of HR" for Devlin Contracting and Devlin Solar, "admitted in an email that [Plaintiff] was owed these wages." *Id.* ¶ 22. "On July 11, 2023," Plaintiff alleges that "Matthew Devlin sent a check to [Plaintiff] in the amount of $148,197.17" and indicated "[o]n the memo line" of the check that the amount was for "'commissions – final payment,' despite knowing full well that [Plaintiff] was still owed hundreds of thousands of dollars in commissions for completed sales on projects which had not yet been installed." *Id.* ¶ 23.

Plaintiff alleges that she sought information from Defendants, primarily so-called "Zoho Reports," that Plaintiff claims "would inform her of the status of projects for which she was owed

commissions but had not yet been installed." *Id.* ¶ 24. Plaintiff alleges that she received an insufficient response to these requests, and, in or around March of 2023, alleges that Defendants "began to send reports that had been tampered with or exhibited alarming discrepancies[.]" *Id.* ¶ 25–26. Though Plaintiff brought these discrepancies to Defendants' attention on March 19, 2024, Defendants did not respond. *Id.* at 10 ¶ 27. "In or around March 19, 2024," Plaintiff claims that she "learned that Matthew Devlin [was] bragging to [Plaintiff's] former colleague and mutual acquaintance that [Matthew Devlin] is deliberately withholding [Plaintiff's] wages, and that he is purposefully 'slow rolling' her commission payments." *Id.* ¶ 28.

### B.    Procedural History

On October 11, 2024, Plaintiff filed suit alleging violations of the MWPCL, Md. Code Ann., Lab. & Empl. (hereinafter "LE") §§ 3-501 to 3-509. *Id.* at 10–11 ¶¶ 29–35. Plaintiff's lone count alleges that she is entitled to be paid the commissions she is owed by Defendants. *Id.* at 11 ¶ 31 (citing LE § 3-505). More specifically, Plaintiff alleges that she is owed "[u]npaid commissions for 23 projects, in the amount of $256,655.00" and "[u]npaid overrides in the amount of $9,765.00." *Id.* ¶ 33. Plaintiff further alleges that "Defendants' failure and refusal to pay wages due to Plaintiff as required by the MWPCL was not the result of any bona fide dispute between Plaintiff and Defendants, as Defendants themselves have repeatedly acknowledged that she is owed these commissions." *Id.* ¶ 34. Plaintiff seeks "a judgment against Defendants, jointly and severally, and in favor of Plaintiff, based on Defendants' violations on the MWPCL in the amount of $266,420.00, plus an additional amount equal to twice the unpaid wages as liquidated damages" as well as "costs and reasonable attorneys' fees[.]" *Id.* at 12.

Plaintiff contends that Defendants were each served with the complaint on October 23, 2024. *See* ECF 5 (Matthew Devlin); ECF 6 (Devlin Contracting); ECF 7 (Devlin Solar); ECF 8 (Brian Devlin); ECF 9 (Cindy Ingemi). Defendants failed to respond to the complaint. On

November 15, 2024, the Clerk of Court entered an Order of Default against Defendants. *See* ECF 11.

On November 19, 2024, Plaintiff filed the Motion seeking "$257,981.88 in unpaid commissions, as well as $9,766.50 in unpaid overrides," for a total of $267,748.38. ECF 17, at 4. Plaintiff also seeks "treble damages under the MWPCL." *Id.* Plaintiff attaches an affidavit she signed attesting to the veracity of the allegations contained in the complaint and listing commissions for 23 projects she alleges she is owed. ECF 17-1. Plaintiff also lists the specific overrides she alleges are due to her. *Id.* at 6 ¶ 26. Plaintiff further attaches pages of documentation supporting her demands for commissions and overrides. *See* ECF 17-1, at 7–29. In support of a request for attorney's fees of $28,600, paralegal services of $637.50, and costs of $2,737.64, Plaintiff's counsel attaches an affidavit affirming these expenses and providing a short explanation for each category of fee. ECF 17-2, at 1–2.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court may conduct hearings or make referrals when necessary to determine the damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Thereafter, the Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. *Id.*

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive.

*S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

A plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of the Court. *See, e.g., Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, Civ. No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, Civ. No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015). With respect to liability, the Court takes as true all well-pleaded facts in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) in the context of default judgments. *See, e.g., Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *Id.* (internal quotation marks omitted); *see also id.* ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted."). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Ryan*, 253 F.3d at 780. "The party moving for default judgment has the burden to show that the defaulted party was properly served and that the unchallenged factual allegations constitute a legitimate cause of action." *Harris v. Blue Ridge Health Servs., Inc.*, 388 F. Supp. 3d 633, 638 (M.D.N.C. 2019) (cleaned up).

If the complaint avers sufficient facts from which the Court may find liability, the Court then turns to damages. *See Ryan*, 253 F.3d at 780–81. The Court must make an independent determination regarding damages and does not accept as true factual allegations related thereto. *See Lawbaugh*, 359 F. Supp. 2d at 422. Damages are restricted to that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

## III.    ANALYSIS

Before addressing whether Defendants are liable and if so, what damages they are liable for, the Court must address two threshold questions:  whether Defendants were properly served and nonetheless failed to file a responsive pleading, *see Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d. 402, 405–06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him); and 2) whether the Court has subject matter jurisdiction over this action, *see Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists."); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."). As to the latter inquiry, the Court easily finds jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and diversity exists between Defendants and Plaintiff.   However, as it relates to service, the record does not

reflect that Brian Devlin, and Cindy Ingemi were properly served, and thus the Court cannot enter default judgment as to these two defendants.

## A.    Service of Process

The Federal Rules of Civil Procedure dictate that "unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or by "delivering a copy . . . to the individual personally," "leaving a copy . . . at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." *See* Fed. R. Civ. P 4(e)(1)–(2). As it relates to Devlin Solar and Devlin Contracting, Rule 4(h) permits service on a corporation: (1) "in the manner prescribed by Rule 4(e)(1) for serving an individual; or" (2) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1).

The docket reflects that Defendants were all served in the same manner by providing a summons to "Matthew Devlin" at "Devlin Energy" at 302 Weymouth St., Ste 203, Rockland MA 02370." *See* ECFs 5–9. Attached to Plaintiff's motion for entry of default are numerous emails between Plaintiff's attorney, Aron Zavaro, and Defendants' attorney, Amanda Thibodeau, in which Zavaro advises multiple times that Plaintiff plans to file suit. *See* ECFs 10-1 to 10-6. On September 10, 2024, Zavaro asked Thibodeau, if she would "agree to accept service on behalf of Devlin Contracting and Maintenance, Inc., Devlin Solar, Inc., Matthew Devlin, Brian Devlin, and Cindy Ingemi?" However, there is nothing in the record evincing Thibodeau's response. On October 31, 2024, Zavaro received a forwarded email from Matthew Devlin stating, "Brian Devlin,

Cindy Ingemi, and I have all received the court Documents as I am authorized to accept them on their behalf, and we will be responding to the paperwork." ECF 10-1.

As it relates to Matthew Devlin, service is proper as he is neither a minor nor incompetent and was "personally" delivered a copy of the summons and complaint. *See* Fed. R. Civ. P 4(e)(2)(A). Further, as it relates to Devlin Solar and Devlin Contracting, records reflect that Matthew Devlin is an officer of both companies and was served in Massachusetts. *Id.* at (4)(h)(B).[3] As such, given that Matthew Devlin, Devlin Solar, and Devlin Contracting have all been served and failed to respond to the lawsuit, the Court can turn to analyzing whether default judgment is warranted as to these defendants.

---

[3] The Secretary of the Commonwealth of Massachusetts maintains online records related to business registrations in Massachusetts, and the Court takes judicial notice of these records. *See Country Club Acres Tr. v. Worcester Country Club Acres, LLC*, No. 21MISC000088JSDR, 2024 WL 196423, at *21 n. 20 (Mass. Land Ct. Jan. 18, 2024) ("The court takes judicial notice of the records made available online by the Secretary of the Commonwealth."); *Avila Inv., LLC v. Rambo*, No. 2084CV01849BLS2, 2021 WL 3292511, at *1 (Mass. Super. June 7, 2021) ("The Court takes judicial notice [of records] from the Secretary of the Commonwealth's publicly-available corporate database[.]"). These records reflect that Matthew Devlin is listed as the President, Treasurer, Secretary, and Director of both Devlin Solar and Devlin Contracting. These records also reflect that "Matthew" is listed as the resident agent for Devlin Contracting, though Devlin Solar appears to have a different resident agent. Regardless, the relevant rule allows for service on that agent or on "an officer, a managing or general agent" of the business, which, as noted, Matthew Devlin appears to be for both Devlin Solar and Devlin Contracting. *See* Fed. R. Civ. P. 4(h)(1)(B); *see also Auctus Priv. Equity Fund, LLC v. First Columbia Gold Corp.*, No. 17-CV-10543-ADB, 2018 WL 3146727, at *2 (D. Mass. Jan. 11, 2018) (noting that federal law "requires service on a corporation to be made by delivery of the complaint and summons to an officer or agent of the corporation, or an agent authorized by appointment or by law to receive service" and further noting that under "Massachusetts Rule of Civil Procedure 4(d)(2). . . service shall be made 'upon a domestic corporation . . . subject to suit within the Commonwealth . . . by delivering a copy of the summons and the complaint to an officer, to a managing or general agent[.]'").

The same cannot be said of Brian Devlin or Cindy Ingemi as it is not established that Matthew Devlin was authorized to receive service on their behalf. Though there is evidence in the record reflecting that Matthew Devlin advised Plaintiff that Matthew Devlin had the authority to accept service on their behalf, *see* ECF 10-1, there is no indication in the record that Brian Devlin and Ingemi approved of this arrangement beyond Matthew Devlin claiming as much. More than Matthew Devlin's affirmation of this alleged fact is required. *See Fenwick v. United States*, 691 F. Supp. 2d 108, 113 (D.D.C. 2010) (stating that a person must in fact be authorized to accept process and that it is not enough that a person accepted the papers or even that the person claimed to have the authority to do so).

Moreover, leaving a summons and complaint with someone at a defendant's workplace is not an authorized form of service under Rule 4(e). *See* Fed. R. Civ. P. 4(e)(2)(B) (allowing for service by "leaving a copy of each at the individual's *dwelling or usual place of abode* with someone of suitable age and discretion who resides there." (emphasis added)). If Plaintiff is proceeding under Fed. R. Civ. P. 4(e)(1), which permits service in a manner that "follow[s] state law for serving a summons in an action brought in courts of general jurisdiction in the state . . . . where service is made," Massachusetts law similarly does not permit service in this manner. *See* Mass. R. Civ. P. 4(d)(1) (requiring process to be served "upon an individual by delivering a copy of the summons and of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process"). Maryland also does not permit service in this way. *See* Md. Rules 2-121 (requiring process to be served upon an individual by "delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; . . . by leaving a copy of the summons, complaint, and all other papers filed with it at

11

the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail"). The Court cannot conclude that Brian Devlin and Cindy Ingemi were properly served with the complaint and summons pursuant to Fed. R. Civ. P. 4(e) and thus default judgment is not warranted as to these two defendants.

"It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before *a default* or a default judgment may be entered against a defendant." *Maryland State Firemens Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996) (emphasis added). As such, the Court will vacate the order of default, *see* ECF 11, as it relates to Brian Devlin and Ingemi.

### B.    Default Judgment

"As a general rule, 'when an action is brought against several defendants, charging them with joint liability,' judgment cannot be entered against a defendant 'until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.'" *Choice Hotels Int'l, Inc. v. Mander*, Civ. No. GJH-14-3159, 2015 WL 1880277, at *2 (D. Md. Apr. 22, 2015) (citing 10A Charles Alan Wright & Arthur R. Miller. Fed Prac. & Proc. Civ. § 2690 (3d ed.)). The decision to refrain from entering default judgements against a subset of defendants is designed to avoid inconsistent results. *See Frow v. De La Vega*, 82 U.S. 552, 554 (1872)[4]; *U.S. for the Use of R.F. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967). "However, this general rule need not apply where 'different results as to different defendants are not logically inconsistent or

---

[4] Though well over a century and a half old, *Frow* remains "[t]he leading case on the propriety of entering final default judgment while claims against other defendants remain outstanding." *Bobb v. FinePoints Priv. Duty Healthcare, LLC*, Civ. No. JKB-23-03129, 2025 WL 2300719, at *11 (D. Md. Aug. 8, 2025). "There, the Court decried the 'unseemly and absurd' possibility that a final judgment could be entered against one defendant, while the case proceeded to the merits against the non-defaulting defendant and an inconsistent judgment be obtained." *Id.* (citing *Frow*, 82 U.S. at 554).

contradictory.'" *Diggs v. Balogun,* Civ. No. TDC-15-0535, 2017 WL 4921690, at \*6 (D. Md. Oct.

31, 2017) (quoting *In re Uranium Antitrust Litig.,* 617 F.2d 1248, 1257-58 (7th Cir. 1980)).

Further, Federal Rule of Civil Procedure 54(b) states that:

> When an action presents more than one claim for relief . . . or when multiple parties
> are involved, the court may direct entry of a final judgment as to one or more, but
> fewer than all, claims or parties only if the court expressly determines that there is
> no just reason for delay.    Otherwise, any order or other decision, however
> designated, that adjudicates fewer than all the claims or the rights and liabilities of
> fewer than all the parties does not end the action as to any of the claims or parties
> and may be revised at any time before the entry of a judgment adjudicating all the
> claims and all the parties' rights and liabilities.

Stated plainly, entry of a default judgment should not produce "logically inconsistent judgments

resulting from an answering defendant's success on the merits and another defendant's suffering

of a default judgment." *Jefferson v. Briner, Inc.,* 461 F. Supp. 2d 430, 434 (E.D. Va. 2006).

Here, Plaintiff seeks judgment against all defendants "jointly and severally" for identical

conduct, the alleged non-payment of Plaintiff's commissions.  ECF 1, at 12.  However, since

Plaintiff alleges that any one of the defendants individually deprived her of her wages, it appears

that Plaintiff does not rest her case on a "theory of recovery [that] is one of true joint liability, such

that, as a matter of law, no one defendant may be liable unless all defendants are liable, or the

nature of the relief demanded is such that, in order to be effective, it must be granted against each

and every defendant." *Phoenix Renovation Corp. v. Gulf Coast Software, Inc.,* 197 F.R.D. 580,

583 (E.D. Va. 2000) (citing 10 J. Moore, et al., Moore's Federal Practice ¶ 55.25 (3d ed.1999)).

Regardless, as the district court in *Phoenix Renovation Corp.* observed, though the Fourth Circuit

has interpreted *Frow* to be "a case of joint liability," it nonetheless has found "the procedure

established for multiple defendants by Rule 54(b) is strikingly similar and applicable not only to

situations of joint liability but also to those where liability is joint and/or several." *Id.* (citing

*Peerless Ins. Co.,* 374 F.2d at 944); *see also Bobb,* 2025 WL 2300719, at \*11 ("The Fourth Circuit

has read *Frow* to extend to cases in which 'liability is joint and/or several' or merely 'closely interrelated.'" (citing *Peerless Ins. Co.*, 374 F.2d at 944–45)).

Of course, most cases discussing the applicability of *Frow* deal with scenarios where "outstanding claims or parties *remain in the case*." *Bobb*, 2025 WL 2300719, at \*11 (emphasis added); *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 434 (E.D. Va. 2006) ("And, if *Frow* still stands for anything, it explicates a cautionary warning to the courts: logically inconsistent judgments resulting from an *answering defendant's* success on the merits and another defendant's suffering of a default judgment are to be avoided.") (emphasis added). However, that Brian Devlin and Ignemi were never served, and thus are not "in the case," has never been viewed as a reason to break the long-standing rule that it is not appropriate to enter a default judgment against one defendant where the allegations assert joint and several liability as to all the defendants. *See Henson v. NaturMed, Inc.*, Civ. No. ELH-18-1102, 2020 WL 13442700, at \*1 (D. Md. Aug. 14, 2020) (finding default judgment inappropriate against one defendant where three co-defendants had not been served); *Zinus, Inc. v. Foshan Aiyi Fam. Article Co.*, No. 8:24-CV-00247-JVS (PVCX), 2024 WL 3542568, at \*3 (C.D. Cal. June 7, 2024) (declining to enter default judgement where "three Defendants have not been served—meaning they have not been given the opportunity to become answering defendants or present any legal theory at all").

It may be the case that Plaintiff wishes to abandon the suit as it relates to Brian Devlin and Ignemi, thereby mooting the issue. Regardless, the Court is mindful that entry of final judgement against Matthew Devlin, Devlin Solar, and Devlin Contracting may present inconsistent outcomes if Brian Devlin and Ignemi were ultimately served, answered, and chose to defend the claims on the merits. Recognizing the risk of inconsistent judgments and noting that two defendants have not been served, the Court finds a "just reason for delay." Fed. R. Civ. P. 54(b). As such, the

14

Court will proceed to analyze the propriety of default judgment as it relates to Matthew Devlin, Devlin Solar, and Devlin Contracting, but will require Plaintiff to update the Court as to the status of Brian Devlin and Ignemi before entering any judgment.

### C. The Merits of Plaintiff's Claim Against Matthew Devlin, Devlin Solar, and Devlin Contracting

The MWPCL provides a private right of action to recover wrongfully withheld wages and "requires an employer to pay an 'employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.'" *Vanegas v. Diaz Granados, Inc.*, Civ. No. PWG-15-2298, 2017 WL 345855, at *3 (D. Md. Jan. 24, 2017) (quoting LE § 3-505(a)). The statute defines "[w]age" as "all compensation that is due to an employee for employment," including "overtime wages." LE § 3-501. To hold Defendants liable under the MWPCL, the Court must first determine whether Defendants were "employers" under the statute.

1. Matthew Devlin, Devlin Solar, and Devlin Contracting are "employers" under the MWPCL.

An "employer" is defined under the MWPCL broadly as "any person who employs an individual in the State or a successor of the person." LE § 3-501(b). An employee "can have multiple employers for MWPCL purposes." *Roley v. Nat'l Pro. Exch., Inc.*, 474 F. Supp. 3d 708, 721 (D. Md. 2020), *aff'd*, 860 F. App'x 264 (4th Cir. 2021) (citing *Pinnacle Grp., LLC v. Kelly*, 178 A.3d 581, 604-05 (Md. App. 2018)) (holding an individual jointly and severally liable, along with his business, as an employer under the MWPCL). To "employ" an individual means to "engage an individual to work" including "allowing an individual to work" and "instructing an individual to be present at a work site." LE § 3-101(c); *Himes Assocs., Ltd. v. Anderson*, 943 A.2d 30, 48 (Md. App. 2008).

To determine whether an individual, in addition to the employing organization, is considered an employer and can be held personally liable for unpaid wages, Maryland courts use the "economic reality" test. *Newell v. Runnels*, 967 A.2d 729, 771–72 (Md. 2009); *Campusano v. Lusitano Const. LLC*, 56 A.3d 303, 308 (Md. App. 2012). Specifically, courts consider whether the employer (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Newell*, 967 A.2d at 772; *Campusano*, 56 A.3d at 309. Consideration of these four factors is aimed at assessing the broader question of whether the putative employer played a role in "causing" the underpayment of the employee and the decision to prioritize other financial obligations. *Campusano*, 56 A.3d at 310 (quoting *Baystate Alt. Staffing v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998)). As a result, courts also consider whether the putative employer had "operational control over significant aspects of the business" and an "ownership interest in the business." *Id.*

Plaintiff alleges that Devlin Solar was her employer. ECF 1, at 2–3 ¶ 3. Though it is a Massachusetts company, Plaintiff claims she "exclusively performed her duties in Maryland," ECF 1, at 2 ¶ 1, and as such, Defendants should be held liable under the MWPCL despite being an out of state company. The Maryland Supreme Court (then named the Court of Appeals) has expressed a "strong public policy" in favor of protection of workers through the MWPCL. *See Cunningham v. Feinberg*, 107 A.3d 1194, 1197–98 (Md. 2015). Accordingly, "Maryland courts have allowed claims under the Maryland wage laws to proceed even when the employer is based out-of-state[.]" *Poudel v. Mid Atl. Pros., Inc.*, Civ. No. TDC-21-1124, 2022 WL 345515, at *3 (D. Md. Feb. 4, 2022), *aff'd*, 115 F.4th 287 (4th Cir. 2024). *See Himes Assocs., Ltd.*, 943 A.2d at 48 (applying the MWPCL to an employee who lived in Maryland, worked primarily in Virginia for a Virginia

16

corporation, but attended meetings twice a month in Maryland); *see also Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622, 633–34 (D. Md. 2015) (applying the MWPCL to a Maryland-based employee's claim against a New Jersey-based employer).

The key question is whether the company "employ[ed]" the individual under the relevant definition. LE § 3-101. Plaintiff asserts that she "began her employment with Devlin"—referring to all five defendants—beginning in "May 2019," ECF 1, at 5 ¶ 10, but does not specify whether she began working for Devlin Solar, Devlin Contracting, or one of the individual defendants at that time. In support of her claims against Devlin Solar, Plaintiff provides her employment agreement, which expressly states that "Devlin Solar shall *employ* [Plaintiff] as a Solar Consultant." ECF 1-1, at 1 (emphasis added).[5] *Roley*, 474 F. Supp. 3d at 716 (observing that Maryland law requires Courts to "interpret contracts by reference to their terms' objective meaning."). The employment agreement also confirms that Devlin Solar permitted Plaintiff to "perform the job duties remotely" or in Massachusetts, ECF 1-1, at 1. Plaintiff sufficiently pleads that Devlin Solar "allow[ed her] to work" in accordance with the definition. LE § 3-101. Plaintiff also alleges that she was employed by Devlin Contracting. ECF 1, at 2 ¶ 2. And although Plaintiff's attached employment agreement is with Devlin Solar, the header on the agreement reflects that Devlin Contracting is not functionally severable from Devlin Solar, thus bolstering Plaintiff's claim. ECF 1-1. Accordingly, the Court finds that Plaintiff has established that she was employed by Devlin Solar and Devlin Contracting.

---

[5] "[C]ourts may consider documents attached to a motion that are 'integral to and explicitly relied on in the complaint.'" *Xerox Corp. v. Kidd Int'l Home Care, Inc.*, Civ. No. 8:21-1058-PX, 2021 WL 4641558, at *1 (D. Md. Oct. 7, 2021) (quoting *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015)). The employment agreement satisfies both requirements and therefore the Court will consider the agreement in the instant analysis.

As noted, Matthew Devlin is owner and president of Devlin Solar and Devlin Contracting. ECF 1, at 3 ¶ 4. Matthew Devlin "had the authority to hire and fire Plaintiff," *id.*, as reflected by his role as signatory to the agreement hiring Plaintiff on an "at will" basis. ECF 1-1, at 1, 4. He also "supervised and controlled" Plaintiff's work schedule, as the agreement notes that "[Plaintiff] will attend and represent Devlin Solar when asked, at trade shows, home shows, fairs, festivals, and any other marketing events from time to time as needed . . . is expected to generate leads, sales, and customers for Devlin Solar on a daily basis . . . [and] is required to attend regularly scheduled calls and meetings set forth by management." *Id.* at 1. Matthew Devlin, representing Devlin Solar, also determined the rate and method of Plaintiff's payment. *Id.* at 2 ("As compensation for the services provided by [Plaintiff] under this Agreement, Devlin Solar will pay [Plaintiff] on a salary of $60,000 per year and sales commission on per project basis."). Plaintiff's factual allegations further suggest that Matthew Devlin was responsible for paying her outstanding commissions, given that Plaintiff contacted or met with Matthew Devlin at least eight times to demand payment, ECF 1, at 5 ¶ 11, at 6–9 ¶¶ 13–16, 18–20, that Matthew Devlin promised to pay Plaintiff her outstanding commissions from a $1 million line of credit, which never materialized, *id.* at 8 ¶ 19, and that Matthew Devlin was the only person who made partial payments of overdue commissions to Plaintiff, *id.* at 8–9 ¶¶ 18, 23. Plaintiff also alleges that Matthew Devlin "acknowledged his failure to pay [Plaintiff's] commissions," *id.* at 8 ¶ 20, ostensibly demonstrating that he assumed personal responsibility for such payment.

Plaintiff does not specifically aver that Matthew Devlin maintained employment records, though this seems implicit in the acknowledgement that he was aware of his obligations to pay her and in Plaintiff's requests for documentation as to her employment, which were directed to him. Regardless, under the economic reality test, "it is the totality of the circumstances, and not any one

factor, which determines whether a worker is the employee of a particular alleged employer."

*Roley*, 474 F. Supp. 3d at 724 (quoting *Campusano*, 56 A.3d at 310). Plaintiff's factual narrative

suggests that Matthew Devlin played a significant role in "causing" her underpayment and made

the decision to prioritize other financial obligations, *see Campusano*, 56 A.3d at 310 (quoting

*Baystate Alt. Staffing*, 163 F.3d at 678), particularly considering Plaintiff's allegation that Matthew

Devlin apparently did not use the funds from the $1 million line of credit to pay Plaintiff, ECF 1,

at 8 ¶ 19, admitted to withholding Plaintiff's payment due to "cash flow" issues, *id.* at 6 ¶ 13, at 7

¶ 18, at 8 ¶ 20, and has purportedly been "deliberately withholding her wages, and . . . purposefully

'slow rolling' her commission payments," *id.* at 10 ¶ 28. Therefore, looking at the totality of the

circumstances, Matthew Devlin qualifies as one of Plaintiff's employers under the economic

reality test and can be held personally liable for Plaintiff's unpaid wages under the MWPCL.

### 2. Plaintiff's commissions and overrides are wages owed to her.

The MWPCL "is a statutory cause of action, the purpose of which is to provide a vehicle

for employees to collect, and an incentive for employers to pay, back wages." *Cunningham*, 107

A.3d at 1202. It requires that "[e]ach employer shall pay an employee . . . all wages due for work

that the employee performed before the termination of employment, on or before the day on which

the employee would have been paid the wages if the employment had not been terminated." LE §

3-505(a). In applying § 3-505, courts consider (1) whether the disputed amount constitutes a wage,

and (2) if so, whether it is owed to the employee as "wages due." *Medex v. McCabe*, 811 A.2d

297, 303 (Md. 2002). The MWPCL defines "wage" as "all compensation that is due to an

employee for employment," which can include "a commission." LE § 3-501(c)(1)–(2); *see also*

*Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 226 n.9 (4th Cir. 2020); *Medex*, 811 A.2d at

302 ("Commissions are clearly within the scope of the [MWPCL]."). For a commission to count

as a "wage," however, "the employee must have been promised the particular form of

19

compensation as remuneration for his labor." *Varghese v. Honeywell Int'l Inc.*, 424 F.3d 411, 418
(4th Cir. 2005). *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 671–72 (Md. 2001)
("[T]he wages which an employee is due, and which must be paid . . . consist of all compensation,
and any other remuneration, that the employee was promised in exchange for his work. In other
words . . . to be wages, to be included within the statute, the payment must have been promised to
the employee as compensation for work performed.") (internal quotation marks omitted); *cf.*
*Medex*, 811 A.2d at 302 ("We have held that it is the exchange of remuneration for the employee's
work that is crucial to the determination that compensation constitutes a wage. Where the payments
are dependent on conditions other than the employee's efforts, they lie outside the definition.").

Plaintiff's allegations establish that her commissions and overrides were promised to her
and constitute a wage. Plaintiff contends that she was "eligible to receive nondiscretionary
commissions associated with her sales efforts" and "nondiscretionary 'overrides'– a commission
that [Plaintiff] earned for each sale made by a member of the sales team that she managed." ECF
1, at 5 ¶ 10 (emphasis omitted); *see also* ECF 17-1, at 5–6 ¶¶ 24–26. Plaintiff's employment
agreement, which Plaintiff alleges "memorialized Devlin's policy on commissions," *id.* at 7 ¶ 17,
also demonstrates Devlin Solar committed "a salary of $60,000 per year" and "sales commission
on a per project basis" in exchange for Plaintiff's work. ECF 1-1, at 2. The "Residential Sales
Commission Structure" outlines the various commissions that Plaintiff could earn for certain sales.
*Id.* at 5–9. These allegations sufficiently establish that Plaintiff's commissions were promised to
her and constitute a wage. Plaintiff has similarly established her entitlement to overrides since
they are a type of commission that was promised to her. Plaintiff also sufficiently pleads that the
commissions and overrides, as wages, are owed to her. Plaintiff avers that Defendants owe her
"[u]npaid commissions for 23 projects" and "unpaid overrides." ECF 1, at 11 ¶ 33; ECF 17-1 at

6 ¶ 28. She also contacted Matthew Devlin multiple times to demand both the outstanding commissions and overrides, and when she did so, he either admitted or did not deny that the payments were owed to her. *Id.* at 6–10 ¶¶ 13, 16, 18–23, 28. Matthew Devlin also allegedly made partial payments of Plaintiff's owed commissions on at least two occasions. *Id.* at 6 ¶ 12, at 7 ¶ 12, 9 ¶ 23. On the memo line of the check for one of these partial payments, Matthew Devlin wrote "commissions – final payment," demonstrating that, at minimum, Plaintiff was owed and paid commissions at one point in time. *Id.* at 9 ¶ 23. Finally, the employment agreement confirms that Plaintiff is entitled to compensation in the form of "payments or partial periods that occurred prior to the date of termination and for which [Plaintiff] has not yet been paid" including "any commission earned in accordance with Devlin Solar's customary procedures." ECF 1-1, at 2.

Plaintiff has adequately alleged that Matthew Devlin, Devlin Solar, and Devlin Contracting failed to comply with the MWPCL. She has properly alleged that she was in their employ and is owed wages in the form of commissions and overrides. She further alleges that she was not paid those commissions and overrides despite being entitled to them. *Whiting-Turner*, 783 A.2d at 671–72. Accordingly, the Court will turn to the assessment of damages.

### D.    Damages

#### 1.  Unpaid Commissions

In determining damages, the Court cannot accept as true Plaintiff's allegations but must instead make an independent determination that is "supported by evidence introduced either at a hearing or by affidavit or other records." *Guzman v. Mahjoub*, Civ. No. PX-17-1591, 2019 WL 2233351, at *2 (D. Md. May 23, 2019); *see also Entrepreneur Media, Inc. v. JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (noting that the Court may "rely instead on affidavits or documentary evidence in the record to determine the appropriate sum" of damages following entry of a default judgment). The Court may "conduct hearings or make referrals," *see* Fed. R. Civ. P.

21

55(b)(2), but a hearing is not required in every circumstance, *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

As it relates to unpaid wages, a plaintiff has the initial burden to prove that she "in fact performed work for which [she was] improperly compensated" and must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). This burden can be satisfied by providing a sworn declaration or affidavit. *See Marsh v. Bottoms Up Gentlemen's Club, LLC*, Civ. No. CV EA-23-1157, 2025 WL 2049980, at *4 (D. Md. July 22, 2025) (collecting cases). Once provided, "[t]he "burden then shifts to the employer to come forward with evidence of the precise amount of work performed." *Anderson*, 328 U.S. at 687–88. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

Plaintiff addresses the commissions owed to her in an affidavit attached to her motion for default judgment and also provides copies of sales invoices in support thereof. ECF 17-1. The invoices appear to be for sales of solar systems which Plaintiff describes in a sworn affidavit as the type of product she sold. ECF 17-1, at 1 ("My job was to sell solar panels, batteries and solar roofing products to Defendants' customers, and once the sale was completed, I earned my commission."). Because Defendants, who are in the position to "keep proper records of wages, hours and other conditions and practices of employment," *Anderson*, 328 U.S. at 687, completely failed to participate in the litigation, the Court will rely on Plaintiff's affidavit and supporting documentation to determine damages. *See Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480, 485 (D. Md. 1982) ("A prima facie case can be made through an employee's testimony giving his recollection of hours worked, . . . [even if] proof of the number of hours worked is inexact or not

22

perfectly accurate."); *Monge*, 751 F. Supp. 2d at 797–801 (awarding unpaid wages on default judgment based upon a plaintiff's "credibl[e]" affidavit). Attached to Plaintiff's affidavit are seven invoices for solar sales that Plaintiff billed to Matthew Devlin totaling $61,849.04. ECF 17-1, at 7–13. Plaintiff also attaches sales records reflecting commissions owed totaling $196,132.84. *Id.* at 14–29. She also avers in her affidavit that she is owed a total of $9,766.50 in overrides based on seventeen sales made by Plaintiff's sales team. *Id.* at 6. Accordingly, Plaintiff provides ample evidence that she is owed $257,981.88 in unpaid commission and $9,766.80 in unpaid overrides, totaling $267,748.68. However, damages are restricted to that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c). As such, the Court will reduce the award to the amount listed in Plaintiff's "Prayer for Relief," which is $266,420. ECF 1, at 12. Next, the Court turns to Plaintiff's request for enhanced liquidated damages.

### 2. Enhanced Damages

The MWPCL allows recovery of "an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs" when "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute." LE § 3-507.2(b). "The assessment whether a bona fide dispute exists centers on whether the party resisting the claim 'has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing.'" *Roley*, 474 F. Supp. 3d at 725 (quoting *Admiral Mortgage v. Cooper*, 745 A.2d 1026, 1031 (Md. 2000)). Though the MWPCL allows for recovery of treble damages, "an employee is not presumptively entitled to enhanced damages, even if the court finds that wages were withheld without a bona fide dispute." *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 630 (Md. 2014). "Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions, that can occur when employees who are not properly paid are unable to meet their financial obligations; and of

23

penalizing employers who withhold wages without colorable justification." *Lopez* v. *Lawns 'R' Us*, Civ. No. DKC-07-2979, 2008 WL 2227353, at *4 (D. Md. May. 23, 2008), *report and recommendation adopted sub nom.*, 2008 WL 11509751 (D. Md. June 26, 2008).

Plaintiff requests treble damages based on Defendants' alleged "deliberate, bad-faith scheme to string along a hard working employee for months on end while enjoying the benefits of her free labor." ECF 17, at 7–8. The Court may, but is not required to, award enhanced damages if Defendants do not establish a bona fide dispute. *Peters*, 97 A.3d at 630. Defendants, of course, have failed to participate in the instant litigation and accordingly failed to offer any evidence of a bona fide dispute. *See Guzman* 2019 WL 2233351, at *4 ("Because Defendants have played no role in this case, they have failed to generate any bona fide dispute.").

Though not a bona fide dispute, treble damages are still not warranted here because Plaintiff has not pled any consequential damages, such as "late charges or evictions." *Lopez*, 2008 WL 2227353, at *4. Courts in this District have granted double damages under the MWPCL upon a finding of no bona fide dispute but have insisted on a showing of such consequential damages before awarding treble damages. *See, e.g., Butler v. PP&G, Inc.*, Civ. No. 20-3084-JRR, 2023 WL 3580374, at *9 (D. Md. May 22, 2023), *report and recommendation adopted as modified*, No. 1:20-CV-03084-JRR, 2023 WL 12090213 (D. Md. June 25, 2023) (declining to award treble damages where the plaintiff "fail[ed] to directly connect [] alleged financial setbacks to the underpayment of the wages"); *Morris v. King Oak Enters., Inc.*, Civ. No. 24-00782-AAQ, 2024 WL 4476303, at *9 (D. Md. Oct. 11, 2024); *Guzman*, 2019 WL 2233351, at *4. The Court declines to award treble damages.

Nevertheless, "trial courts are encouraged to consider the remedial purpose of the [M]WPCL when deciding whether to award enhanced damages to employees" and the "practical

difficulties that employees have in bringing lawsuits to recover wages owed." *Peters,* 97 A.3d at 662. In fact, "[i]n this District, it has become 'customary" to award double damages . . . rather than treble damages under the MWPCL when (1) the defendant offers no evidence of a bona fide dispute that would make liquidated damages inappropriate, but (2) the plaintiff offers no evidence of consequential damages suffered because of the underpayments." *Ruano v. Scratch Kitchen & Bistro, LLC*, Civ. No. DKC 23-2461, 2025 WL 2194634, at *10 (D. Md. Aug. 1, 2025).

As noted, there is no evidence of consequential damages but similarly no hint that a bona fide dispute was reason for the non-payment of Plaintiff's wages. Indeed, Plaintiff has alleged that "Matthew Devlin has been bragging . . . that he is deliberately withholding [Plaintiff's].wages, and that he is purposefully 'slow rolling' her commission payments." ECF 1, at 10 ¶ 28. Accordingly, the Court finds that double damages are appropriate here. *Monge*, 751 F. Supp. 2d at 799–800 (D. Md. 2010) (awarding double damages where Defendants did not offer any evidence of a bona fide dispute, and Plaintiffs did not offer evidence of consequential damages); *Serrano v. Chicken-Out Inc.,* 209 F. Supp. 3d 179, 193 (D.D.C. 2016) (collecting cases). Accordingly, the Court will follow the "customary approach" and order double damages under the MWPCL in the amount of $266,420.

### 3. Attorney's Fees

A court may also award attorney's fees to a prevailing party under the MWPCL and Plaintiff has requested attorney's fees and costs in the amount of $29,237.50. ECF 17-3. The court determines the reasonableness of an attorney's fee by starting with the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is commonly known as the "lodestar" method. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). Further, the Court is guided by twelve

factors in determining whether the fee request is reasonable.[6] *See Barber v. Kimbrell's Inc.*, 577

F.2d 216, 226 n. 28 (4th Cir.1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway*

*Express, Inc.*, 488 F.2d 714 (5th Cir.1974)). Plaintiff has not provided proof of such attorney's

costs and expenses with sufficient specificity for the Court to perform the required analysis.[7] For

example, there are no billing records attached to demonstrate that the proposed fees and costs are

accurate. *See Fed Nat'l Mortg. Ass'n v. Huang*, Civ. No. TDC-14-3323, 2015 WL 5038305, at *4

(D. Md. Aug. 24, 2015) (denying request for attorney's fees where "the affidavit provide[d] a

figure for attorney's fees," but it did not "provide any billing records or other information to

substantiate the charges," or provide "sufficient information on billing rates to. allow for a proper

lodestar calculation of the fees") (citing Loc. R. Appendix B: Guideline 3 (D. Md. 2014)).

Accordingly, the Court is unable to verify the legitimacy of the attorney's fees calculation because

there is no evidence in the record for the Court to independently review them. Accordingly, no

---

[6] The twelve factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226 n. 28 (citations omitted).

[7] Plaintiff's claim for attorney's fees and other costs also contains some mathematical inaccuracies. It is not clear from Plaintiff's attorney's affidavit whether he has worked 53.9, 57.2, or 58.7 hours on this matter. ECF 17-2, at 2. Counsel also seeks $29,237.50 in attorney's fees and costs, but the amounts set forth in Plaintiff's attorney's affidavit do not appear to add up to this sum as "$2,737.64 in costs," *id.* at 2 ¶ 7, plus "$28,600" in attorney's fees, *id.* at ¶ 9 equals $31,337.64.

attorney's fees will be awarded on this record. However, within 14 days, Plaintiff may submit additional documentation to substantiate the attorney's fees request.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgement is **GRANTED** in part and **DENIED** in part. The request for attorney's fees is **DENIED** without prejudice. Specifically, Plaintiff's Motion will be provisionally **GRANTED** as to Matthew Devlin, Devlin Solar, and Devlin Contracting. The Court will not enter judgment against these three defendants until 14 days following this order and will await a status report from Plaintiff, to be filed before that date, addressing how Plaintiff intends to proceed against the remaining unserved Defendants. The motion is **DENIED** as to Brian Devlin and Cindy Ingemi. The Clerk's Entry of Default as to Brian Devlin and Cindy Ingemi, *see* ECF 11, is **VACATED**. If Plaintiff wishes to maintain this action against Brian Devlin and Cindy Ingemi, the Court will not enter judgment against Matthew Devlin, Devlin Solar, and Devlin Contracting and will vacate this Memorandum Opinion. Additionally, Plaintiff's Motion will be **DENIED** as to attorney's fees, however the Court grants Plaintiff one opportunity to supplement the record on attorney's fees within 14 days of the date of this Order.

A separate order will issue.


Dated: <u>September 30, 2025</u>                           <u>            /s/            </u>
                                                                        Brendan A. Hurson
                                                                        United States District Judge

27